Filed 7/31/25  P. v. Davis CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B337195 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA517644) |
| v. | |
| LASHAWN DAVIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alison S. Matsumoto, Judge.  Affirmed.

Ashwini S. Mate, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

A jury convicted Lashawn Davis of making a criminal threat and assault with a deadly weapon. The trial court sentenced Davis to the middle term of two years for making a criminal threat, doubled to four years under the "Three Strikes" law, and imposed and stayed the lower term of two years for the assault. Davis contends the court improperly relied on several circumstances in aggravation to impose the middle term. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Relevant Evidence at Trial*

1. *Prosecution evidence*

On September 3, 2023, Carlos C.[1] was sitting at his vending stand. Davis lived in a motor home across the street from Carlos's stand. Carlos was familiar with Davis because he "would throw things around" and "break things around his motor home."

Carlos saw Davis cross the street and run toward his stand, yelling " 'son of a bitch' " and " ' motherfucker.' " Davis came "very close" to Carlos and, while holding a hammer, said, " 'Motherfucker, I want to kill you.' " Davis continued to threaten Carlos and swung the hammer near Carlos's head five or six times.

Afraid that Davis would kill him, Carlos called 911 from his cell phone. While Carlos was on the phone, Davis's friend called

---

[1] We refer to the victim by his first name and last initial only. (See Cal. Rules of Court, rule 8.90(b)(4) [permitting us to refer to "[v]ictims in criminal proceedings" by first name and last initial to protect their privacy interests].)

2

over to Davis and told him to leave Carlos alone. Davis crossed the street and walked toward his friend. A video camera captured the entire incident, and the People played the footage for the jury.

Shortly after Carlos called 911, Officer Jesus Tapia with the Los Angeles Police Department arrived. Carlos told Tapia that someone "held a hammer toward[] him." Carlos appeared "frantic," "scared," and had "tears coming out of his eyes."

Davis came back to Carlos's stand while Tapia was investigating and appeared very angry. Carlos identified Davis as the person who assaulted him.

2. *Defense evidence*

Davis testified that on the morning of September 3, 2023, he was fixing damage to his motor home using wood, nails, and a hammer. When he finished the work, he walked over to Carlos. He was mad at Carlos because he thought Carlos was responsible for the damage to his motor home and was "doing voodoo" on him. He was so angry that he forgot he was holding a hammer. With the hammer "down by [his] waist," Davis told Carlos, "I want my money." He denied threatening Carlos or swinging the hammer toward him.

3. *Rebuttal*

Officer Tapia testified that when he spoke to Davis at the scene, Davis did not "make any statements about asking [Carlos] for money." Rather, Davis told Tapia that he confronted Carlos because of the damage to his motor home, "possible voodoo," and that "they might have put worms inside of him." Davis's statements concerned Tapia because Davis "did . . . not seem to be [of] sound . . . mind." As a result, Tapia contacted the "mental evaluation unit."

3

B.    *Verdict and Sentencing*

The jury convicted Davis of making a criminal threat (Pen. Code, § 422, subd. (a))[2], and assault with a deadly weapon (§ 245, subd. (a)(1)).  Davis admitted he had two prior "strike" convictions from 1989 within the meaning of the Three Strikes law.  (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)  He also admitted one circumstance in aggravation: that he served a prior term in prison or county jail.  (Cal. Rules of Court, rule 4.421(b)(3).)[3]

Before sentencing, Davis moved to dismiss his prior strike convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.  He argued that he suffers from mental health issues and "[a]t the time of his testimony [he was] sincere in his belief of the voodoo and witchcraft."  He asked the court to strike both of his prior strike convictions and stated, "If the court were to strike both strikes . . . Davis would ask the court to impose the sentence of [two] years calculated as follows, mid[dle] term [of two] years for [making a criminal threat] and low term [of two] years for [the assault] . . . to be served concurrently."

The court granted Davis's motion as to one of his prior strikes.  The court reasoned that Davis believed Carlos "was somehow involved in vandalism of his R.V.," "Davis had some mental health issues that were in play," and the two strikes from 1989 were remote.

---

[2]    Further statutory references are to the Penal Code.

[3]    Further rule references are to the California Rules of Court.

With respect to Davis's sentence, the court found four circumstances in aggravation: the crime involved a threat of great bodily harm (rule 4.421(a)(1)), Davis was armed with a weapon at the time of the commission of the crimes (rule 4.421(a)(2)), Davis's prior convictions were of increasing seriousness (rule 4.421(b)(2)), and Davis served a prior term in prison or county jail (rule 4.421(b)(3)). The court also found two circumstances in mitigation: Davis mistakenly believed that his conduct was legal (rule 4.423(a)(7)), and Davis was suffering from a mental condition that reduced culpability for the crime (rule 4.423(b)(2)).

The court sentenced Davis to a total term of four years in state prison, consisting of the middle term of two years for making a criminal threat, doubled under the Three Strikes law (§ 1170.12, subd. (c)(1)). The court also imposed the lower term of two years for the assault but stayed the sentence under section 654.

Davis timely appealed.

## DISCUSSION

Davis contends that the court improperly considered three of the four circumstances in aggravation to impose the middle term for his conviction of making a criminal threat. He acknowledges his trial counsel failed to object to the court's reliance on the aggravating circumstances either before or at sentencing. By failing to object, Davis forfeited his challenge on appeal. (See *People v. Tilley* (2023) 92 Cal.App.5th 772, 778 ["Generally, if a party does not object to the sentence in the trial court," that party "may not claim on appeal the trial court failed to properly make or articulate its discretionary sentencing

5

choices."]; accord, *People v. Boyce* (2014) 59 Cal.4th 672, 730-731; see also *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100-1102 (*Sperling*) [defendant forfeited objection to dual use of aggravating factor for failure to object].)  Even had Davis not forfeited his contention of sentencing error, his argument fails on the merits.[4]  Although the court improperly relied on two aggravating circumstances, the court's error was harmless.

A.     *Relevant Legal Principles*

In cases subject to a determinate sentencing triad, the middle term is the presumptive term, unless certain exceptions exist.  (§ 1170, subd. (b)(1) ["When . . . the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)."]; *People v. Sarmiento-Zuniga* (2025) 108 Cal.App.5th 1216, 1224.)[5]  "In imposing a

_____

[4]     We exercise our discretion to consider the merits and thus need not discuss Davis's associated claim for ineffective assistance of counsel.  (See *People v Lua* (2017) 10 Cal.App.5th 1004, 1014.)

[5]     Subdivision (b)(2) of section 1170 provides that the trial court may impose the upper term if there are circumstances in aggravation that justify the upper term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt.  (§ 1170, subd. (b)(2).)  In addition, section 1170, subdivision (b)(6), establishes a rebuttable presumption that the lower term applies if any of three specified circumstances was a contributing factor in the commission of the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be

6

middle term sentence, all that section 1170 requires is that the court apply the Judicial Council's sentencing rules and that the court state the facts and reasons for imposing the middle term on the record at the time of sentencing." (*Sarmiento-Zuniga*, at pp. 1223-1224; see § 1170, subds. (a)(3), (b)(5), (c); rule 4.401 et seq. [felony sentencing rules].) Relevant here, the Judicial Council's sentencing rules provide: "In selecting between the middle and lower terms of imprisonment, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The court may consider factors in aggravation and mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial." (Rule 4.420(d).)

Discretionary sentencing decisions, such as whether the aggravating circumstances outweigh the mitigating circumstances, are "reviewed for an abuse of discretion." (*People v. Salazar* (2023) 15 Cal.5th 416, 428, fn. 8; accord, *People v. Hilburn* (2023) 93 Cal.App.5th 189, 205 (*Hilburn*).) "That 'discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest." ' [Citation.] The court abuses 'its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.' " (*Hilburn*, at p. 206.)

---

contrary to the interests of justice." (§ 1170, subd. (b)(6); see *People v. Sarmiento-Zuniga*, 108 Cal.App.5th at p. 1225.) None of these exceptions applies here.

When a trial court relies on both proper and improper reasons for its discretionary sentencing decisions, it is state law error only, reviewable under the "reasonably probable" standard set out in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (See *People v. Price* (1991) 1 Cal.4th 324, 492 [" 'When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' "], cited with approval in *People v. Lynch* (2024) 16 Cal.5th 730, 760, fn. 14 and *In re F.M.* (2023) 14 Cal.5th 701, 715; see *Sperling, supra*, 12 Cal.App.5th at p. 1104 [" 'In order to determine whether error by the trial court in relying upon improper factors in aggravation . . . requires remanding for resentencing[,] "the reviewing court must determine if 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " ' "]; cf. *Lynch*, at p. 761 [when the trial court relies on improperly proven aggravating facts to justify an *upper term* sentence, a Sixth Amendment violation occurs and the stricter test under *Chapman v. California* (1967) 386 U.S. 18 applies].)

B.   *The Court's Reliance on Improper Aggravating Circumstances To Impose the Middle Term Was Harmless*

    1.   *The court improperly relied on two aggravating circumstances*

Davis acknowledges the court properly relied on one aggravating circumstance (his prior prison term) but contends the court improperly relied on three others in imposing the middle term, namely that (1) the crime involved a threat of great

bodily harm, (2) Davis's prior convictions were of increasing seriousness, and (3) Davis was armed with a weapon. The People concede that the court improperly relied on the first two of these three aggravating circumstances, and we accept the People's concession. We also agree with the People that the court properly relied on the aggravating factor that Davis was armed with a weapon.

First, the trial court improperly relied on the aggravating circumstance that the offense involved a threat of great bodily injury. "A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term." (Rule 4.420(h); see *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1261 ["It is established that a circumstance that is an element of the substantive offense cannot be used as a factor in aggravation."].) To prove a defendant is guilty of making a criminal threat, the People must prove that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person." (§ 422, subd. (a).) Because an element of making a criminal threat involves threatening "great bodily injury" (§ 422, subd. (a)), it was improper for the court to rely on the fact that Davis threatened great bodily harm (rule 4.420(a)(1)) to aggravate his sentence for that offense. (See rule 4.420(h).)

Second, the trial court improperly relied on the aggravating circumstance that Davis's convictions are of increasing seriousness (rule 4.421(b)(2)). A trial court may consider a circumstance in aggravation to impose the middle term so long as the circumstance is supported by "a sufficient factual basis." (*Hilburn*, *supra*, 93 Cal.App.5th at p. 205.) Davis was convicted of the following offenses, in chronological order: second-degree

9

robberies (Pen. Code, § 211) in 1989, possession of a controlled substance for sale (Health & Saf. Code, § 11351) in 1993, and sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a)) in 1994.

The punishment for Davis's prior offenses is greater (and the same in one instance) than the punishment for his current offenses. (Compare Pen. Code, § 213, subd. (a)(2) [imprisonment for two, three, or five years for second degree robbery]; Health & Saf. Code, §§ 11351 [imprisonment for two, three, or four years for possession of a controlled substance for sale]; and Health & Saf. Code, § 11352, subd. (a) [imprisonment for three, four, or five years for sale of a controlled substance] with Pen. Code, § 245, subd. (a)(1) [imprisonment for two, three, or four years for assault with a deadly weapon] and Pen. Code, § 18 [imprisonment for 16 months, two years, or three years for making a criminal threat].) Moreover, although Davis's current offenses are statutorily designated as "serious" felonies (§ 1192.7, subd. (c)(31), (38)), his prior convictions for second degree robbery are both "serious" and "violent" felonies (§§ 667.5, subd. (c)(9), 1192.7, subd. (c)(19)), which are treated more harshly. (E.g., § 2933.1, subd. (c) [defendants convicted of violent felonies can earn only 15 percent of presentence credit].) In sum, there is insufficient evidence supporting the finding that his convictions are of increasing seriousness.

On the other hand, we disagree with Davis that it was improper for the court to rely on the aggravating circumstance that Davis was armed with a weapon (rule 4.421(a)(2)). Davis contends the elements of making a criminal threat "require the . . . fact that [Davis] was armed with a hammer," in violation of the rule against dual use of facts at sentencing. Specifically, he

10

contends the following two elements—(1) the threat actually caused the person threatened "to be in sustained fear for his or her own safety," and (2) the threatened person's fear was "reasonabl[e]" under the circumstances (§ 422, subd. (a); see CALCRIM No. 1300)—required the fact that he was armed with a weapon.

Davis mistakenly focuses on his personal actions in committing the offense rather than what is inherent in committing the offense. "A sentencing factor is only an element of the offense . . . if the crime as defined by statute cannot be accomplished without performance of the acts which constitute such factor." (*People v. Burbine, supra*, 106 Cal.App.4th at p. 1262.) Making a criminal threat as defined in section 422 can be accomplished without the defendant being armed with or using a weapon. (See *People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 809-810 ["section 422 does not require an immediate ability or even an actual intention, to carry out the threat"]; cf. *People v. Wilson* (2010) 186 Cal.App.4th 789, 814 [holding there was substantial evidence to support conviction for making a criminal threat where defendant "said that he had killed officers in the past, said he would 'blast' [the officer], and simulated pulling a trigger with his fingers"]; *People v. Gaut* (2002) 95 Cal.App.4th 1425, 1430-1432 [same where defendant repeatedly made threatening telephone calls to victim].) Thus, the fact that Davis was armed with a weapon could be used as an aggravating factor.

In short, we agree with Davis, in part, that the court erred in relying on two of the four aggravating factors—that the crime involved a threat of great bodily harm, and Davis's prior convictions were of increasing seriousness.

11

## 2. *The court's error was harmless*

Davis has not met his burden to show that, absent the court's error in relying on two out of four circumstances in aggravation to impose the middle term, there was a reasonable probability of a more favorable result. (See *People v. Price, supra,* 1 Cal.4th at p. 492.)

The court properly relied on two aggravating factors—that Davis was armed with a weapon and had served a prior term in jail or prison. Under rule 4.420, the court was not required to rely on *any* aggravating factors when imposing the middle term. (Rule 4.420(d) ["judge *may* consider circumstances in aggravation" (italics added)].) Given the circumstances here, it is not reasonably probable that the court would have imposed the lower term had it known it could not rely on the two additional aggravating factors as well. (Cf. *Sperling, supra,* 12 Cal.App.5th at pp. 1104-1105 [even if court had stated improper reasons for imposing consecutive sentences, the error would have been harmless because there were multiple aggravating factors].)

First, although the court noted two mitigating factors—Davis mistakenly believed that his conduct was legal (rule 4.423(a)(7)) and was suffering from a mental condition that reduced his culpability for the crime (rule 4.423(b)(2))—it had already relied on both those factors to justify striking one of Davis's prior strikes. And these mitigating factors were not " 'super mitigant[s]' " (*People v. Morgan* (2024) 103 Cal.App.5th 488, 515, review granted, Oct. 2, 2024, S286493, disapproved on other grounds in *People v. Wiley* (2025) 17 Cal.5th 1069),[6] as they

---

[6] "A 'super mitigant' is a 'mitigating factor enumerated in . . . [section] 1170(b)(6) that, if established as a contributing factor to

12

would be for sentencing under section 1170, subdivision (b)(6)(B), giving rise to a presumption that the court should impose the lower term for a determinate sentence. Rather, they are among the 25 ordinary mitigating factors relating to the crime and the defendant that the court is supposed to consider (but which are not entitled to any particular weight) in selecting between the middle and lower terms. (Rules 4.420, 4.423.)

Second, the two improper aggravating circumstances are factually related to the two proper ones. The court improperly considered that Davis's threat involved great bodily harm but properly considered that Davis was armed with a weapon. Both these circumstances speak to the way Davis's actions increased the risk of harm to Carlos. Similarly, the court improperly considered that Davis's prior convictions were of increasing seriousness but properly considered that Davis had served a prior term in prison. These circumstances both pertain to Davis's criminal history. Because of the factual similarities between the improper and proper aggravating circumstances, we cannot say that either of the improper aggravating circumstances was determinative to the court's sentencing decision.

---

the commission of the offense, limits the court to imposition of the low term of imprisonment, unless the court finds the aggravating circumstances outweigh the mitigating circumstances so that imposition of the low term would be contrary to the interests of justice' or 'a mitigating factor enumerated in . . . [section] 1385(c)(2) that requires or weighs greatly in favor of the court dismissing or striking any additional punishment for conduct and status enhancements unless the court finds there is a likelihood that dismissal would result in physical injury or serious danger to others.' " (*People v. Morgan*, *supra*, 103 Cal.App.5th at p. 515, fn. 13, review granted.)

Finally, the court had already exercised leniency by striking one of Davis's prior strike convictions.

Given these circumstances, we cannot conclude the court would have sentenced Davis differently had it not considered the two improper aggravating factors.  Thus, the alleged error was harmless.

## DISPOSITION

The judgment is affirmed.


STONE, J.

We concur:


SEGAL, Acting P. J.


FEUER, J.